IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

               Plaintiff,

    vs.

JESSICA JOYCE SPAYD,

               Defendant.

Case No. 3:19-cr-0111-JMK

**ORDER RE PENDING
MOTIONS *IN LIMINE***

        In anticipation of trial, the United States of America ("the Government")
filed seven motions *in limine* ("MIL").[1]  Defendant Jessica Spayd filed limited or full
oppositions to three of the Government's MILs.[2]  Ms. Spayd also filed seven MILs.[3]  The
Government filed limited or full oppositions to five of Ms. Spayd's MILs.[4]  This Order
addresses five of the Government's MILs and all seven of Ms. Spayd's MILs.  The
remainder of the Government's MILs will be addressed in a separate Order or at the Final
Pretrial Conference, currently scheduled for Wednesday, September 21, 2022, at
12:00 p.m. in Anchorage Courtroom 3.

---

[1] Docket 183; Docket 185; Docket 186; Docket 193; Docket 200; Docket 210; Docket 211.
[2] Docket 227; Docket 228; Docket 229; Docket 234; Docket 235.
[3] Docket 212; Docket 213; Docket 214; Docket 215; Docket 216; Docket 217; Docket 218.
[4] Docket 220; Docket 221; Docket 223; Docket 224; Docket 225.

# I. LEGAL STANDARD

## A. Motion *in Limine*

Motions *in limine* are a "procedural mechanism to limit in advance testimony or evidence in a particular area."[5] District courts have the power to rule on motions *in limine* pursuant to their "inherent authority to manage the course of trials."[6] However, "a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court."[7] A ruling on a motion *in limine* therefore is not binding on the district court, which may "change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling."[8] To exclude evidence on a motion *in limine*, the evidence must be "clearly inadmissible on all potential grounds."[9] "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[10] Further, motions *in limine* that seek the exclusion or inclusion of "broad and unspecific categories of evidence . . . are generally disfavored."[11]

---

[5] *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).

[6] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[7] *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (quoting *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999)).

[8] *Id.*

[9] *See, e.g., Swan v. United States,* No. 3:15-cv-0012 JWS, 2016 WL 7030426, at *1 (D. Alaska Dec. 1, 2016) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

[10] *See, e.g., id.* (quoting *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)); *United States v. Bairamas*, No. 3:10-cr-00103-TMB-JDR, 2011 WL 13141476, at *1 (D. Alaska June 28, 2011).

[11] *Jackson v. Cnty. of San Bernardino,* 194 F. Supp. 3d 1004, 1008 (C.D. Cal. 2016).

## B.     Federal Rules of Evidence

Below, the Court lays out the Federal Rules of Evidence that are most relevant to the parties' pending MILs.

### (1)     Rule 403

Pursuant to Federal Rule of Evidence 403, a district court has discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[12]  "Unfair prejudice' is an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"[13]

### (2)     Rule 404

Federal Rule of Evidence 404(b)(1) provides:  "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, under Rule 404(b)(2) "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  "Other act" evidence will be admitted under Rule 404(b)(2) if:

> (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and

---

[12] *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (quoting *United States v. Waters*, 627 F.3d 345, 353 (9th Cir. 2010)); *see also* Fed. R. Evid. 403.

[13] *Anderson*, 741 F.3d at 950 (quoting *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)).

(4) in cases where knowledge or intent are at issue, the act is similar to the offense charged.[14]

Where the "other act" evidence a party seeks to introduce is "inextricably intertwined" with the crime charged in the indictment, the evidence is admissible irrespective of Rule 404(b).[15]  Evidence is "inextricably intertwined" when it is (1) "part of the transaction that serves as the basis for the criminal charge" or (2) when it is "necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[16]

## II.   DISCUSSION

### A.   The Government's MILs

#### (1)   Motion *in limine* to preclude evidence of specific acts of good conduct

At Docket 186, the Government moves to preclude Ms. Spayd from offering any evidence at trial "of specific acts of her own good conduct, including any legitimate medical services she may have performed at Eagle River Wellness . . . or other legitimate medical jobs she may have held."[17]  The Government argues this evidence constitutes inadmissible character evidence and its probative value is substantially outweighed by unfair prejudice.[18]  Ms. Spayd opposes the Government's MIL, arguing that specific acts

---

[14] *United States v. Sathre*, No. 3:20-cr-00043-SLG, 2022 WL 889285, at *2 (D. Alaska Mar. 25, 2022) (quoting *United States v. Lague*, 971 F.3d 1032, 1038, n.5 (9th Cir. 2020)).

[15] *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011).

[16] *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (quoting *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012)).

[17] Docket 186 at 1–2.

[18] *Id.* at 2.

of Ms. Spayd providing legitimate medical care is not character evidence prohibited by Rules 404(a) and 405, and is evidence that is directly relevant to her state of mind.[19]

Generally, "[a] defendant cannot establish his [or her] innocence of crime by showing that he [or she] did not commit similar crimes on other occasions."[20] Therefore, if Ms. Spayd seeks to introduce evidence of specific acts of good conduct for propensity purposes, the Court will exclude it.[21] However, there are several non-propensity grounds upon which this evidence may be admissible. Ms. Spayd's legitimate medical services or related "good acts" may be admissible under a reverse Rule 404(b)(2) theory, as they are relevant to Ms. Spayd's intent and knowledge.[22] Further, evidence of a defendant's prior "good acts" may be relevant where it is alleged that the defendant engaged in continuing "bad acts," "or where such 'good acts' would undermine the underlying theory of prosecution."[23] The Government has acknowledged in its MILs that Count 10 of the Superseding Indictment, which charges Ms. Spayd with maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1), alleges continuous criminal conduct during

---

[19] Docket 227 at 2–4.

[20] *United States v. Glazer*, 850 F. App'x 488, 492 (9th Cir. 2021) (quoting *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955)).

[21] Ms. Spayd has not expressed any inclination to offer evidence in this way. *See* Docket 227 at 2–4.

[22] *See United States v. Akers*, No. 7:19-CR-7-REW-EBA, 2019 WL 4934948, at *6 (E.D. Ky. Oct. 7, 2019) ("However . . . evidence of patient management and prescribing conduct—with respect to the patients underlying the Government's theory of the conspiracy, during the charged timeframe, and in the at-issue non-medical settings—could, potentially, be probative of Defendants' overall course of practice and prescribing intent."); *see also United States v. Frantz*, No. I:19CR0489-1, 2021 WL 3419488, at *7 (N.D. Ohio Aug. 5, 2021).

[23] *United States v. James*, No. 19-CR-0382 (JS), 2022 WL 2106268, at *6 (E.D.N.Y. June 10, 2022); *see also United States v. Hills*, No. 1:16CR329, 2018 WL 3120637, at *3 (N.D. Ohio June 24, 2018) (evidence of prior good acts "may be probative, however, where a defendant is alleged to have 'always' or 'continuously' committed the acts alleged.").

the relevant timeframe.[24]  Specific acts of Ms. Spayd's good conduct therefore is relevant to rebut the proposition that Ms. Spayd maintained her practice for the purpose of illegally distributing drugs.  The Government may not seek to introduce prior bad act evidence with the argument that it tends to prove the continuous nature of Count 10, while simultaneously seeking to preclude Ms. Spayd from offering prior good act evidence to undermine this theory of guilt.

Notwithstanding, the defense has not proffered any specific "good acts" evidence it intends to present at trial.  Without knowing the form this evidence will take, or the purpose for which it is offered, the Court cannot definitively rule on its admissibility. The Court declines to preclude a broad category of potentially probative evidence in a vacuum.  Accordingly, the Government's MIL at Docket 186 is DENIED WITHOUT PREJUDICE to renew at trial.

(2)     **Motion *in limine* to admit victim photographs**

At Docket 193, the Government moves for an order permitting it to admit photographs of the deceased patients listed in Counts 1–5 of the Superseding Indictment.[25] The Government contends these photographs, which include "several clinical photographs taken where the victims were found, and of the victims at the coroner's office, where they are lying flat on an examination table" are highly probative of the patients' cause of death.[26] The Government asserts that the pictures will allow the Government to "present to the jury

---

[24]  *See* Docket 200 at 3 (asserting that patient files for patients not identified in the Superseding Indictment are relevant to Count 10 due to its continuous nature).
[25]  Docket 193 at 1.
[26]  *Id.* at 2.

a more complete, visual picture of events as opposed to relatively vague testimony" and the jury may expect to see photographs of the deceased and could hold the absence of such photographs against the Government.[27]  Ms. Spayd did not respond to the Government's motion.

First, the Court is not convinced that a jury will expect to see photographs of the deceased in this case—alleging illegal overprescribing—to the same extent they might in a case involving a violent crime.[28]  Second, the Court cannot assess the probative value of the photographs outside the context of trial.  It is not clear to the Court at this time whether the photographs will add anything to anticipated testimony regarding the patients' cause of death and the physical indicators of an overdose.  Further, the photographs have a high potential for unfair prejudice, as they are likely to evoke an emotional reaction from the jury.  The Court will not rule on this issue until it can conduct a Rule 403 balancing analysis in the context of the trial and the evidence already presented therein.[29]  Accordingly, the Government's MIL at Docket 193 is DENIED WITHOUT PREJUDICE to renew at trial outside the presence of the jury.  Finally, the Court notes that the photographs depict widely divergent scenes and, if they have probative value, that probative value will not be consistent across all of the photographs.   Should the

---

[27] *Id.* at 3.
[28] *See Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997).
[29] *See Tucker v. Las Vegas Metro. Police Dep't*, No. 2:05-cv-01216-LDG, 2012 WL 5378143, at *1 (D. Nev. Oct. 30, 2012).

Government renew this request during trial, the Court will expect it to argue that the Rule 403 balancing analysis favors admission for each photograph.[30]

### (3) Motion *in limine* to admit patient files and prescription drug monitoring program ("PDMP") data

At Docket 200, the Government seeks an order to admit (1) Ms. Spayd's patient files, including for those patients not identified in the Superseding Indictment, and (2) PDMP data from 2014 to 2019 and summaries of that data.[31] The Government argues (1) that the entire patient files for the patients identified in the Superseding Indictment are relevant to the issue of whether Ms. Spayd's was prescribing controlled substances outside the course of usual professional practice and without a legitimate medical purpose; (2) the patient files of patients not identified in the Superseding Indictment are relevant to Count 10; and (3) the PDMP data is highly probative of each count in the Superseding Indictment.[32] The Government provided the Court with a signed declaration from the PDMP Program Manager for the State of Alaska for the purposes of Federal Rules of Evidence 803(6) and 902.[33] Ms. Spayd did not respond to the Government's motion.

The patient files of those patients identified in the Superseding Indictment are relevant and probative of the issue of whether Ms. Spayd wrote these patients prescriptions outside the scope of course of usual professional practice and without a

---

[30] *See United States v. Mitchell,* 502 F.3d 931, 968 (9th Cir. 2007) ("The district court painstakingly scrutinized graphic photographs offered by the government, making refined judgments about which should be received into evidence, and how they should be cropped or displayed to minimize prejudicial impact.").

[31] Docket 200 at 1–2.

[32] *Id.* at 2–8.

[33] Docket 200-1.

legitimate medical purpose.[34] The patient files for patients not identified in the Superseding Indictment are relevant because the Ninth Circuit has ruled that "practice-wide evidence," including uncharged prescriptions, is probative of unlawful intent in 21 U.S.C. § 841(a) prosecutions.[35] This practice-wide evidence, to the extent it constitutes "other act" evidence, therefore may be properly admitted under Rule 404(b)(2), as it is probative of intent and knowledge, it appears it is not too remote in time from the charges in the Superseding Indictment, there likely is sufficient evidence that Ms. Spayd wrote these prescriptions, and these "other acts" are similar to the crimes charged.[36]

The patient files for patients not identified in the Superseding Indictment are also relevant to Count 10, which alleges that, from 2014 to 2019, Eagle River Pain & Wellness, LLC, was maintained for the purpose of distributing controlled substances outside the usual course of professional practice and without a legitimate medical purpose.[37] Evidence from Ms. Spayd's other patient files falls outside of Rule 404 because it is inextricably intertwined with the drug-involved premises charge as it is relevant to whether the illegal distribution of controlled substances was one of the primary or principal purposes for which Ms. Spayd's practice was maintained.[38] For the same reasons, the

---

[34] *See United States v. Kraynak,* No. 4:17-CR-00403, 2022 WL 3161907, at *8 (M.D. Pa. Aug. 8, 2022) ("The evidence of Kraynak's abusive prescription habits, along with the massive deficiencies in the patient records, strongly supports the conclusion that Kraynak's prescriptions to the victims identified in Counts One through Twelve of the indictment were not issued in the usual course of professional practice or with a legitimate medical purpose.").

[35] *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020).

[36] *Id.* at 1038.

[37] Docket 87 at 6.

[38] *See United States v. Nasher-Alneam*, 399 F. Supp. 3d 561, 568 (S.D.W. Va. 2019) (collecting cases and noting "overall practice evidence of the type the government seeks to introduce herein is widely use in prosecutions involving medical establishments under 21 U.S.C. § 856); *United States v. Li*, No. 3:16-CR-0194, 2019 WL 1126093, at *11 (M.D. Pa. Mar. 12, 2019).

PDMP data is relevant and intrinsic to Count 10. The PDMP data also is highly probative of the other counts in the Superseding Indictment because it reveals the type and frequency of Ms. Spayd's prescriptions of controlled substances and is the type of "red flag" evidence that is probative of a prescriber's knowledge and intent.[39] PDMP data, or summaries thereof, is regularly admitted in § 841 prosecutions concerning medical professionals.[40]

Despite the relevance of this evidence, and the fact that it appears to fall within the hearsay exceptions listed by the Government, the Court cannot rule on this broad set of evidence without first seeing it.[41] The Court cannot conduct a proper Rule 404(b)(2) or Rule 403 analysis without previewing the evidence at issue. The Government's MIL at Docket 200 is therefore DENIED WITHOUT PREJUDICE to renew at trial. The Court directs the parties to meet and confer regarding the patient files and PDMP data.[42] If a

---

[39] *Lague*, 971 F.3d at 1040 ("[W]e hold that uncharged prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose. Lague's practice-wide evidence was therefore probative of his unlawful intent, undermining his defense at trial that the charged prescriptions amounted to "a few bad judgments.").

[40] *See United States v. Ifediba,* No. 20-13218, 2022 WL 3652680, at *15 (11th Cir. Aug. 25, 2022); *United States v. Gayden,* 977 F.3d 1146, 1151 (11th Cir. 2020); *Lague,* 971 F.3d 1032, at 1037; *United States v. Merrill,* 513 F.3d 1293, 1300 (11th Cir. 2008); *United States v. Kraynak,* 553 F. Supp. 3d 245, 252 (M.D. Pa. 2021); *United States v. Li,* No. 3:16-CR-0194, 2019 WL 1126093, at *11 (M.D. Pa. Mar. 12, 2019).

[41] *See Lague,* 971 F.3d 1032, at 1040 ("We assume, without deciding, that the district court abused its discretion by failing to preview all of the prescription data before granting the government's motion in limine."); *United States v. Curtin,* 489 F.3d 935, 958 (9th Cir. 2007) ("In this light, we hold as a matter of law that a court does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate all that it must weigh. Relying only on the descriptions of adversary counsel is insufficient to ensure that a defendant receives the due process and fair trial to which he is entitled under our Constitution, as this case demonstrates. One cannot evaluate in a Rule 403 context what one has not seen or read.").

[42] The Court also notes that, in the Government's trial brief, the Government stated that it will provide the medical record and PDMP summary charts to the defense prior to trial. *See* Docket 182 at 37. If these charts have not yet been provided to the defense, the Court orders that the Government do so in this meet and confer.

stipulation concerning its reliability and admissibility cannot be reached, the parties are directed to submit a joint statement describing the specific evidentiary disputes surrounding this evidence, including examples of the relevant exhibits. Further, to the extent this evidence is considered "other act" evidence under Rule 404(b)(2), the Court will consider giving the jury a limiting instruction that is specific to this type of evidence.

### (4) Motion *in limine* to admit evidence of uncharged patient deaths

At Docket 210, the Government moves for an order to admit evidence regarding patient deaths not specifically alleged in First Superseding Indictment.[43] The Government argues this evidence of uncharged patient deaths is inextricably intertwined with Count 10 and is separately admissible under Rule 404(b).[44] Ms. Spayd responds that this evidence is unduly prejudicial because (1) some deceased patient evidence is irrelevant, as those patients were not patients of Ms. Spayd's at the time of their death; (2) certain patient deaths were unaccompanied by a medical examiner's report, without which Ms. Spayd has no means to examine if the prescriptions were the cause of their death; (3) certain patients died from causes unrelated to prescriptions, such as self-inflicted gunshot wounds; and (4) there is no statistical context provided for this evidence.[45]

The Court concludes that certain evidence of uncharged deaths likely falls under Rule 404(b)(2) because evidence that Ms. Spayd knew patients were dying at a certain rate is probative of her knowledge and intent that she was acting outside the scope

---

[43] Docket 210 at 1.
[44] *Id.* at 2.
[45] Docket 235 at 2.

of professional practice and without a legitimate medical purpose. The uncharged deaths the Government seeks to present occurred contemporaneously with, and are similar in nature to, the crimes charged in the Superseding Indictment.[46] Uncharged death evidence is likely separately admissible because they are inextricably intertwined with Count 10 because they constitute direct evidence that, from 2014 to 2019, Ms. Spayd knowingly maintained her practice with the primary purpose of illegally distributing controlled substances. Courts have admitted evidence of uncharged patient deaths in similar cases.[47]

      Nevertheless, evidence of other, uncharged patient deaths has the potential to be significantly prejudicial and confusing to the jury, especially where, as here, the Superseding Indictment charges Ms. Spayd with causing the deaths of certain patients identified in Counts 1–5.[48] The Ninth Circuit has commented that use of uncharged patient death evidence was "troubling" in a case where the cause of one of the deaths was cancer, not drug abuse.[49] The Ninth Circuit stated that "although some of the patient deaths could have been relevant to prove intent, knowledge, and absence of mistakes . . . [certain] testimony—accompanied by photographs—of the people whose lives were ruined,

---

[46] See Docket 210 at 8.

[47] *See United States v. Schwartz,* 702 F. App'x 748, 756 (10th Cir. 2017) (holding admission of evidence of deceased patients was inextricably intertwined with the charged offenses and was properly admitted); *United States v. Bourlier,* 518 F. App'x 848, 856 (11th Cir. 2013) (holding that district court did not abuse its discretion by finding that any unfair prejudice did not *substantially* outweigh the probative value of uncharged patient death evidence because the jury received limiting instructions and there was undisputed testimony that other factors besides the drugs prescribed contributed to each death); *United States v. Frantz,* No. 19CR0489-1, 2021 WL 3419488, at *2 (N.D. Ohio Aug. 5, 2021) (allowing evidence of uncharged patient death).

[48] *United States v. Kostenko,* No. 5:16-cr-00221, 2017 WL 1395500, at *2 (S.D.W. Va. Apr. 17, 2017) (granting motion *in limine* to exclude evidence of uncharged patient deaths, finding the potential for unfair prejudice and confusion substantially outweighs the probative value of the uncharged patient deaths).

[49] *United States v. Diaz,* 717 F. App'x 684, 687 (9th Cir. 2017).

allegedly by the easy access to drugs facilitated by [the defendant], was of 'extremely limited' probative value."[50]  Finally, because the Court has not previewed this evidence, it has no means with which to accurately and definitively conduct a Rule 403 balancing analysis.  Accordingly, the Government's MIL at Docket 210 is DENIED WITHOUT PREJUDICE to renew at trial.  Without ruling on its admissibility, the Court will, however, establish parameters for this evidence should the Government seek to admit it during trial: evidence of uncharged patient deaths will be limited to those patients who were Ms. Spayd's patients at the time of their death and for whom there is a medical examiner's report.  The Government is precluded from offering evidence of patient deaths whose cause of death clearly is unrelated to controlled substances, *i.e.*, those who suffered gunshot wounds.  Finally, should this evidence be admitted, Ms. Spayd is entitled to a specific limiting instruction to blunt the potential prejudicial effect of such evidence.[51]

### (5) Motion *in limine* re mental defect and intoxication evidence

At Docket 211, the Government moves for an order (1) excluding evidence, argument, or jury instruction regarding a mental defect, including bipolar disorder; and

---

[50] *Id.*

[51] *United States v. Hofstetter*, No. 3:15-CR-27-TAV-DCP, 2019 WL 6718489, at *6 (E.D. Tenn. Dec. 9, 2019).  ).  The Court in *Hofstetter* proposed the following limiting instruction, which has been adapted to this case.  The parties are invited to consider and comment on for use in this case:  The Superseding Indictment charges the defendant with causing the overdose deaths of specific patients.  Those are what I will refer to as "charged deaths."  You will receive more instructions with respect to determining culpability for charged deaths.  In addition to evidence of charged deaths, the government may introduce evidence of other patients' deaths, deaths which are not charged in the indictment.  Those are what I will refer to as "uncharged deaths."  The defendant is not charged with the deaths of such patients.  Accordingly, you may only consider evidence of uncharged patient deaths to determine whether the defendant knowingly or intentionally prescribed controlled substances in an unauthorized manner and whether the defendant knowingly maintained a place for the purpose of knowingly or intentionally prescribing controlled substances in an unauthorized manner.

(2) excluding argument that Ms. Spayd's substance abuse negatively impacted her ability to form the specific intent to commit the crimes charged in the Superseding Indictment.[52] Ms. Spayd did not respond to this motion. However, Ms. Spayd filed a similar MIL, seeking to preclude the Government from introducing evidence regarding her mental health because Ms. Spayd's mental health "is not at issue in this case."[53] Because Ms. Spayd has not provided notice of a defense of insanity or a notice indicating she intends to introduce expert evidence relating to a mental disease or defect,[54] and because both parties agree evidence regarding a mental disease or defect is irrelevant, the Government's MIL at Docket 211 is GRANTED IN PART. Evidence, argument, or jury instruction regarding a mental defect, including bipolar disorder, is excluded.

The Government also argues that Ms. Spayd should be precluded from arguing that being under the influence of a substance negated her specific intent to commit the crimes charged.[55] The Government discloses that it intends to introduce some evidence of Ms. Spayd's substance abuse for its own purposes, but that such evidence cannot be used by Ms. Spayd to argue she lacked the requisite specific intent because (1) Ms. Spayd will be unable to establish sufficient evidence that she was intoxicated "at all relevant times" and (2) intoxication did not preclude her from forming specific intent.[56] Based on the record presently before it, the Court has no means with which to conclude that

---

[52] Docket 211 at 1–2.
[53] Docket 217 at 1.
[54] *See* Fed. R. Crim. P. 12.2. For the purposes of this Order, the Court does not include substance addiction or substance abuse within the definition of mental disease or defect or mental health. Substance abuse or addiction is addressed separately in the next paragraph.
[55] Docket 211 at 8–11.
[56] *Id.* at 8–10.

Ms. Spayd cannot prove she was intoxicated at the relevant times or this intoxication could not preclude her from forming the necessary specific intent. The Government essentially asks the Court to preclude Ms. Spayd from offering voluntary intoxication as a defense because, from its perspective, she does not have enough evidence to support that defense. However, it is improper for the Court to weigh evidence or resolve factual disputes on a MIL.[57] Accordingly, the Government's MIL at Docket 211 is DENIED IN PART WITHOUT PREJUDICE to renew at trial as it relates to the use of evidence of Ms. Spayd's intoxication to negate specific intent.

## B. Ms. Spayd's MILs

### (1) Motion *in limine* to exclude government expert

At Docket 212, Ms. Spayd seeks to exclude the testimony of two of the Government's proposed expert witnesses, Dr. Timothy Munzing and Dr. Timothy King.[58] Ms. Spayd asserts that their testimony is confusing, unfairly prejudicial, and irrelevant in light of the Supreme Court's decision in *Ruan v. United States,* 142 S. Ct. 2370 (2022) (hereinafter, "*Ruan*").[59] Specifically, Ms. Spayd asserts that the Government expert's testimony (1) relies on medical malpractice standards to determine liability, which is improper after *Ruan* because the *Ruan* Court "eliminated an objectively reasonable standard as the basis for liability and instead focused upon a defendant's subjective intent," and (2) the experts improperly opine on Ms. Spayd's intent.[60] The Government responds

---

[57] *See, e.g., United States v. Moi*, No. 3:19-cr-00112-TMB-SAO-2, 2022 WL 408846, at *2 (D. Alaska Feb. 10, 2022).

[58] Docket 212 at 1.

[59] *Id.* at 1–7.

[60] *Id.* at 3.

that its experts' opinions are in line with *Ruan* and that its experts will not improperly opine about Ms. Spayd's mental state.[61]

Ms. Spayd's arguments largely are duplicative of those she advanced in her Motion to Dismiss Indictment, which this Court denied at Docket 208. As this Court noted in that Opinion, the *Ruan* Court specifically endorsed the Government's ability to prove knowledge of lack of authorization by measuring the reasonableness of a prescriber's subjective beliefs against objective criteria.[62] In order to do so, the Government must be allowed to present evidence of that objective criteria. Ms. Spayd also argues that lack of authorization under 21 U.S.C. § 841 is defined as "a type of illicit drug trafficking."[63] However, the *Ruan* Court specifically stated that "as provided by regulation, a prescription is *only authorized* when a doctor issues it 'for a legitimate medical purpose . . . acting in the usual course of his professional practice.'"[64] Contrary to Ms. Spayd's assertions, this standard does not mean that medical professionals will be punished for medical malpractice.[65] Rather, pursuant to *Ruan*, a medical professional will only be held liable under § 841 if the Government proves beyond a reasonable doubt that they *knowingly* or *intentionally* prescribed medications without a legitimate medical purpose and while acting outside the usual course of professional practice.[66] To make this determination, the jury

---

[61] Docket 223 at 1–3.
[62] *Ruan v. United States,* 142 S. Ct. 2370, 2382 (2022) ("The Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence . . . [a]nd the regulation defining the scope of a doctor's prescribing authority does so by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'") (internal citations omitted)).
[63] Docket 212 at 4.
[64] *Ruan,* 142 S. Ct. at 2375 (emphasis added).
[65] Docket 212 at 6.
[66] *Ruan,* 142 S. Ct. at 2375, 2382 (emphasis added).

may hear expert opinion evidence regarding what constitutes a legitimate medical purpose and the boundaries of the scope of usual professional practice.[67]  The Government's experts therefore may opine that Ms. Spayd's actions violated a standard of care or certain medical standards.

The Government's experts also may opine that Ms. Spayd's prescriptions were made with no apparent legitimate medical purpose or outside the course of usual professional practice—these are objective criteria, not opinions on Ms. Spayd's mental state.[68]  Neither of the Government's experts have indicated that they intend to opine that Ms. Spayd possessed the requisite *mens rea* associated with a § 841 violation, *i.e.,* that she knowingly or intentionally prescribed medications without a legitimate medical purpose and outside the course of usual professional practice.[69]  The Government's experts' opinions therefore do not improperly invade the province of the jury.  Ms. Spayd's MIL at Docket 212 is DENIED.  To address Ms. Spayd's concerns that the jury will assess

---

[67] *See United States v. Sun*, 673 F. App'x 729, 733 (9th Cir. 2016) (finding "the district court did not plainly err in allowing expert testimony on the standards of care, including medical regulations, regarding prescribing controlled substances and treating narcotic addiction because 'only after assessing the standards to which medical professionals generally hold themselves is it possible to evaluate whether a practitioner's conduct has deviated so far from the 'usual course of professional practice' that his actions become criminal.'") (citations omitted)); *see United States v. Agresti*, No. 18-CR-20124-RAR, 2022 WL 2966680, at *3 (S.D. Fla. July 27, 2022) (applying *Ruan*'s logic to 18 U.S.C. §§ 1347 and 1349 and noting that "[a]t trial, the jury also heard expert testimony regarding the lack of any medical necessity underlying Defendant's extensive testing protocol . . . [t]his evidence is precisely the sort of objective evidence as to 'legitimate medical purpose and usual course of professional practice' the *Ruan* Court tethered to a defendant's subjective intent."); *see also United States v. Kraynak*, No. 4:17-CR-00403, 2022 WL 3161907, at *3–4 (M.D. Pa. Aug. 8, 2022) (describing expert testimony relevant to objective criteria for assessing whether prescriptions were made for medically-legitimate purposes in the usual course of professional practice).

[68] *See Ruan,* 142 S. Ct. at 2383.

[69] *See* Docket 223 at 2–3.

Ms. Spayd's guilt solely on the basis of objective criteria that is untethered to her intent or knowledge, the Court will consider offering a limiting instruction to the jury on this point.

 **(2)**  **Motion *in limine* to preclude testimony of USPO**

   At Docket 213, Ms. Spayd seeks to exclude the testimony of Alexandria Conaway, a probation and pretrial services officer ("PSO") for the United States District Court, District of Alaska.[70] Ms. Conaway supervised Ms. Spayd after Ms. Spayd's release.[71] As Ms. Conaway did not know Ms. Spayd prior to the initiation of the charges in the Indictment, Ms. Spayd asserts that "[t]he only testimony Conaway could give would be related to Ms. Spayd's conduct on pretrial release."[72] The Government did not respond to Ms. Spayd's motion.

   18 U.S.C. § 3153(c)(1) provides, "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential." Section 3153(c)(3) states that confidential information under that statute "is not admissible on the issue of guilt in a criminal judicial proceeding unless such proceeding is a prosecution for a crime committed in the course of obtaining pretrial release or a prosecution for failure to appear for the criminal judicial proceeding with respect to which pretrial services were provided." The Ninth Circuit has affirmed a district court's ruling excluding the testimony of a PSO where the testimony is confidential information under

---

[70] Docket 213 at 1.
[71] *Id.* at 2.
[72] *Id.*

18 U.S.C. § 3153(c) and the Government had not shown that an exception under that statute was applicable.[73]  The Ninth Circuit reasoned that allowing PSOs to testify regarding the pretrial services they rendered would thwart the overall purpose of 18 U.S.C. § 3153(c), as "[p]retrial supervisees and other individuals who provide information to PSOs about those supervisees would be unlikely to provide candid, complete information."[74]  Here, the Government has not shown how Ms. Conaway's testimony would fall outside the scope of confidential information as defined by § 3153(c)(1) or that any of the exceptions listed in § 3153(c)(2) apply.  Ms. Spayd's MIL at Docket 213 is therefore GRANTED.

### (3)  Motion *in limine* to exclude hearsay

At Docket 214, Ms. Spayd seeks to exclude out-of-court statements about Ms. Spayd's prescriptions made by other medical care providers to Ms. Spayd's former patients.[75]  Ms. Spayd argues these statements are hearsay and their admission would violate her right to due process, her right of confrontation, and her right to effective assistance of counsel."[76]  The Government responds that the statements are (1) nontestimonial and thus not covered by the Confrontation Clause and (2) admissible to show the effect on the listener, to place the patients' statements in context, as present sense impressions under Federal Rule of Evidence 803(1), as excited utterances under Federal Rule of Evidence 803(2), or are generally admissible under the Federal Rule of Evidence 807, the residual hearsay exception.[77]

---

[73] *United States v. Santa*, 769 F. App'x 450, 452 (9th Cir. 2019).
[74] *Id.* at 453.
[75] Docket 214 at 1–2.
[76] *Id.* at 1.
[77] Docket 221 at 2.

The Government has provided three statements of other medical providers that it intends to introduce through the testimony of their patients.[78]  First, the Court finds these statements are not testimonial and therefore do not implicate the Confrontation Clause.  The Supreme Court has held that a "statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial," meaning that, in light of all the circumstances, "the primary purpose of the conversation was 'to create an out-of-court substitute for trial testimony.'"[79]  Here, there is no indication that the conversations between patients and their medical providers were conducted for any reason other than to exchange information about the patient's health in order to provide treatment.  Therefore, these statements are nontestimonial and the admissibility of these statements "is the concern of . . . [the] federal rules of evidence, not the Confrontation Clause."[80]

Second, the Court has reviewed the three statements provided by the Government and has determined that the statements are hearsay and must be excluded under the Federal Rules of Evidence.  The Government argues these statements are not offered for their truth, but rather to show the effect on the patients and to explain the patients' subsequent actions.[81]  However, the relevance of these statements to prove those subsequent actions is minimal and attenuated—the Government argues that many patients who learned from their new doctors that their prescriptions were excessive stopped using controlled substances, which leads to the inference that those patients did not require the

---

[78] Docket 222 (sealed).
[79] *Ohio v. Clark*, 576 U.S. 237, 245–46 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 366 (2011)).
[80] *Id.* at 245.
[81] Docket 221 at 4–7.

level of opioids Ms. Spayd was prescribing to them.[82]  The Government also argues that the medical provider's statements are being offered solely to provide context for the patients' own statements, which are admissible under Federal Rule of Evidence 803(4).[83] The Government asserts that the Court can protect against the risk of unfair prejudice through a limiting instruction, instructing the jury to asses these statements only for their proper, non-truth use.[84]  However, where, as here, the statements are much more relevant for their truth than the effect on the listener or for context, the Court does not find that a limiting instruction will be sufficient to alleviate the risk of unfair prejudice stemming from the juror's potential improper use of the statements.[85]

Further, none of the hearsay exceptions the Government identified apply here.  These statements are not present sense impressions because they do not describe or explain an event or condition that the medical providers were currently perceiving.[86]  The medical providers were simply responding to information they had received from their patient or their patient's charts.  Similarly, none of these statements qualify as excited utterances.  The medical providers were not under the stress of excitement caused by a startling event or condition when they made these statements.[87]  While certain medical

---

[82]  *Id.* at 6.
[83]  *Id.* at 7.
[84]  *Id.*
[85]  *See United States v. Di Rodio*, 565 F.2d 573, 576 (9th Cir. 1977); *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994) ("[M]ere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice.  The greater the likelihood of prejudice resulting from the jury's misuse of the statement, the greater the justification needed to introduce the "background" evidence for its non-hearsay uses.").
[86]  *United States v. Holden*, 625 F. App'x 316, 318 (9th Cir. 2014).
[87]  *United States v. Canales-Fuentes*, 176 F. App'x 873, 875 (9th Cir. 2006).

providers may have been surprised at their patients' prescriptions from Ms. Spayd, there is no indication that this news was "sufficiently startling to render normal reflective thought processes inoperative" or that their comments were spontaneous exclamations and not the result of reflective thoughts.[88]

Finally, the Court will not admit these statements under the Federal Rule of Evidence 807, the residual hearsay exception. Rule 807 allows admission of evidence that does not fit within a hearsay exception when (1) "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement" and (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."[89] The Ninth Circuit has "repeatedly observed the established rule that Fed. R. Evid. 807 'is to be used rarely and in exceptional circumstances.'"[90] Here, the Court cannot find that offering medical practitioner's statements through their patients is "more probative than any other evidence that could be obtained through reasonable efforts." Testimony from the medical providers themselves is the best available evidence.[91] The Government acknowledges that it could "call all of the other medical providers to testify as fact witnesses," but this would lengthen the Government's witness list and "judicial economy favors admissibility."[92] This is true anytime statements are inadmissible

---

[88] *See Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1026 (N.D. Cal. 2006).
[89] Fed. R. Evid. 807(a).
[90] *United States v. Sumlin*, No. 2:18-CR-00473-CAS-1, 2022 WL 1664256, at *9 (C.D. Cal. May 23, 2022) (quoting *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980)).
[91] *Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir. 1991).
[92] Docket 221 at 10.

because they are hearsay and the declarant is available to testify, but the ban on hearsay applies, nonetheless. Accordingly, Ms. Spayd's MIL at Docket 214 is GRANTED IN PART with respect to the three statements identified at Docket 222. These statements are hearsay and must be excluded. Of course, the Government may still call the declarants to testify as fact witnesses. This ruling applies only to the three statements at Docket 222; regarding other patient statements, the Court cannot broadly preclude a category of statements without analyzing the statements themselves. Ms. Spayd's MIL at Docket 214 is therefore DENIED WITHOUT PREJUDICE to renew at trial with respect to all other patient statements not identified in Docket 222.

### (4) Motion *in limine* to preclude bad act evidence

At Docket 215, Ms. Spayd moves the Court to prohibit the Government from introducing "other bad act, uncharged evidence in violation of F.R.E. 404(b)."[93] If the Government seeks to introduce such evidence, Ms. Spayd asserts that the Government first must establish that the proposed evidence falls within an exception under Rule 404(b).[94] The Government did not respond.

Ms. Spayd's MIL at Docket 215 requests that the Court follow the Federal Rules of Evidence, which it would do anyway. Further, the Government has provided notice of certain "other act" evidence that it wishes to introduce at trial,[95] as partially

---

[93] Docket 215 at 1.
[94] *Id.*
[95] *See* Docket 200; Docket 211; Docket 231.

discussed herein. Accordingly, because the Court will follow the Federal Rules of Evidence, Ms. Spayd's Motion at Docket 215 is GRANTED.

### (5) Motion *in limine* to preclude evidence of client's license

At Docket 216, Ms. Spayd requests that the Court prohibit the Government from introducing evidence regarding the status of her medical license.[96] Ms. Spayd asserts that discussion of her license reflects upon her release conditions because she was ordered not to seek reinstatement of her nursing license or DEA number as part of her Pretrial Release Conditions.[97] The Government responds in partial opposition, indicating that it does not intend to elicit evidence regarding the current status of Ms. Spayd's medical license, but it does intend to admit evidence that Ms. Spayd voluntarily surrendered both her medical license and DEA Registration during a non-custodial interview with law enforcement on October 8, 2019.[98] The Government argues the voluntary surrender forms constitute direct evidence of defendant's consciousness of guilt and her subjective knowledge and intent.[99]

Courts regularly admit evidence of past administrative actions in prosecutions involving illegal overprescribing.[100] These previous actions tend to prove that a prescriber "had notice of relevant medical standards" and it "demonstrates his [or her] intent or lack of mistake in his [or her] subsequent prescribing practices.[101] This

---

[96] Docket 216 at 1.
[97] *Id.* at 2; Docket 65 at 3.
[98] Docket 224 at 1–2.
[99] *Id.* at 2.
[100] *See United States v. Suetholz*, No. CR 21-56-DLB-CJS, 2022 WL 3973255, at *4 (E.D. Ky. Aug. 30, 2022) (collecting cases).
[101] *Id.* at *5.

evidence also tends to indicate a "possible continuing pattern of illegal activity" and how a prescriber's conduct evolved.[102]  Here, it is not clear to the Court how evidence regarding Ms. Spayd's voluntary surrender of her medical license is probative of her consciousness of guilt or subjective knowledge or intent when she surrendered her license *after* the dates listed in the Superseding Indictment.[103]  The Court also notes that the probative value of Ms. Spayd voluntary surrender to prove intent or knowledge of wrongdoing is minimal— Ms. Spayd's actions could be interpreted as an acknowledgement that she was about to be arrested rather than an indication that she knew her prescribing practices were unauthorized.  With the record currently before it, the Court finds that any minimal probative value of the circumstances surrounding Ms. Spayd's voluntary surrender is substantially outweighed by the risk of unfair prejudice and jury confusion.  The jury is likely to view Ms. Spayd's surrender as an admission of wrongdoing, even if the Government does not intend to argue this point.[104]  However, the Court acknowledges that the Rule 403 balancing for this evidence may change during the course of trial.  Accordingly, Ms. Spayd's MIL at Docket 216 is GRANTED IN PART as it relates to the current status of her license, evidence of which the Government represents that it does not intend to introduce, and DENIED WITHOUT PREJUDICE to renew at trial with respect to Ms. Spayd's voluntary surrender of her license.

---

[102] *Id.* at *4.
[103] *See* Docket 10; Docket 87.
[104] Docket 224 at 2–3.

**(6)      Motion *in limine* to preclude evidence of client's mental health**

At Docket 217, Ms. Spayd seeks to prohibit the Government from offering evidence of Ms. Spayd's mental health.[105]   As discussed above, the Government filed a similar MIL.[106]   Because both parties agree this evidence is irrelevant, Ms. Spayd's MIL at Docket 217 is GRANTED.   Evidence, argument, or jury instruction regarding a mental defect, including bipolar disorder, is excluded.

**(7)      Motion *in limine* to preclude use of term victim**

At Docket 218, Ms. Spayd seeks to prohibit the use of the term "victim" to describe the deceased patients in Counts 1–5 of the Superseding Indictment.[107]   Ms. Spayd argues that, since it is disputed whether a crime occurred, it is inappropriate for the Government to refer to the deceased patients as "victims."[108]   The Government responds that there is nothing inherently prejudicial about the use of the term victim and courts have widely approved it use in trials.[109]

Courts have noted that "mere use of the term ["victim"] does not prejudice Defendant, as it may be a 'fair comment on the evidence.'"[110]   However, "the manner, context, and frequency in which the term is used transforms its meaning and connotations."[111]   Certain courts have acknowledged that "[t]he frequent or pervasive use

---

[105]  Docket 217 at 1.
[106]  *See* Docket 211.
[107]  Docket 218 at 1.
[108]  *Id.* at 2.
[109]  Docket 225 at 2–4.
[110]  *United States v. Perez*, No. ED CR 13-00087-(A)-VAP, 2014 WL 12689229, at *9 (C.D. Cal. May 15, 2014), *aff'd*, 662 F. App'x 495 (9th Cir. 2016); *see also United States v. Gibson,* 690 F.2d 697, 703 (9th Cir. 1982).
[111]  *United States v Moffit*, No. 2:21-CR-00053-BLW, 2022 WL 656904, at *8 (D. Idaho Mar. 2, 2022).

of the term 'victim' by the Government during the presentation of its evidence may be unfairly prejudicial to a defendant where the fact of the commission of a crime is at issue."

The term "victim" necessarily creates an inference that a crime has been committed. The Court is persuaded that here, where the fact of a commission of a crime and the cause of death of the decedents is at issue, labeling the deceased patients as "victims" runs the risk of improperly influencing the jury's decision and is subversive of the presumption of innocence.[112] The Court therefore exercises its discretion to prohibit the use of the term "victim" at Ms. Spayd's trial. Ms. Spayd's MIL at Docket 218 is GRANTED. The Government is precluded from using the term "victim" to describe the deceased patients in Counts 1–5 and should instruct its witnesses regarding the same. If the Government refers to the deceased patients as victims during trial, Ms. Spayd is entitled to a limiting instruction indicating that the Government referring to a patient as a "victim" is not evidence the patient is in fact a victim or that Ms. Spayd has committed a crime.[113]

## III. CONCLUSION

Based on the reasons articulated above, IT IS HEREBY ORDERED THAT:

1. The Government's MIL at Docket 186 is DENIED WITHOUT PREJUDICE to renew at trial.

[112] *United States v. Aug.*, No. EP-21-CR-00912-FM, 2022 WL 780583, at *3 (W.D. Tex. Mar. 10, 2022) ("In the present context, use of the term "victim" creates an inference that Defendant has committed a crime. As a result, use of the term is likely to improperly color the jury's decision-making by creating an assumption that the Government has already proved a core element of its case.").

[113] *United States v. James*, No. 19-CR-0382(JS), 2022 WL 2106268, at *14 (E.D.N.Y. June 10, 2022); *United States v. Tawfik*, No. CR 17-20183, 2022 WL 866395, at *7 (E.D. Mich. Mar. 23, 2022).

*United States v. Spayd*                                    Case No. 3:19-cr-00111-JMK
Order Re Pending Motions in Limine                          Page 27
Case 3:19-cr-00111-JMK-MMS   Document 239   Filed 09/20/22   Page 27 of 28

2.    The Government's MIL at Docket 193 is DENIED WITHOUT PREJUDICE to renew at trial outside the presence of the jury.

3.    The Government's MIL at Docket 200 is DENIED WITHOUT PREJUDICE to renew at trial.

4.    The Government's MIL at Docket 210 is DENIED WITHOUT PREJUDICE to renew at trial.

5.    The Government's MIL at Docket 211 is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE to renew at trial.

6.    Ms. Spayd's MIL at Docket 212 is DENIED.

7.    Ms. Spayd's MIL at Docket 213 is GRANTED.

8.    Ms. Spayd's MIL at Docket 214 is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE to renew at trial.

9.    Ms. Spayd's MIL at Docket 215 is GRANTED.

10.   Ms. Spayd's MIL at Docket 216 is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE to renew at trial.

11.   Ms. Spayd's MIL at Docket 217 is GRANTED.

12.   Ms. Spayd's MIL at Docket 218 is GRANTED.

IT IS SO ORDERED this 20th day of September, 2022, at Anchorage, Alaska.

_____
        */s/ Joshua M. Kindred*
        JOSHUA M. KINDRED
        United States District Judge